HAMITER, Justice.
On June 8, 1950, Mrs. Virginia Steére Marston separated from her husband (Randolph F. Marston), left the City of Shreveport in which the matrimonial domicile was located, and journeyed by plane to the City of New Orleans. Two years and two days later, specifically on June 10, 1952, she commenced this action against Mr. Marston in the Civil District Court for the Parish of Orleans, the divorce demand herein being grounded on their alleged living separate and apart for more than two years.
Following a trial of the merits such court decreed, among other things, an absolute divorce and a partition of the property belonging to the community of acquets and gains, all in accordance with plaintiff’s prayer; and it referred the interested parties to an Orleans Parish notary public for the purpose of effecting the partition.
*97 The defendant appealed from the judgment, and in this court he complains as follows:
1. “The Civil District Court for the Parish of Orleans did not have jurisdiction ratione materiae to entertain this action at the domicile of the plaintiff, since plaintiff had not resided continuously within the jurisdiction of the court for two years preceding the date of the filing of the suit.”
2. “The separation between the parties, which occurred on June 8, 1950, was not voluntary * *
3. “The Civil District Court for the Parish of Orleans is without jurisdiction ratione materiae to partition and liquidate the community of acquets and gains heretofore existing between the parties.”
We shall consider these complaints in the order listed.
Assuming for the sake of argument, and for that purpose only, that in order for the Orleans Parish court to legally entertain the divorce action plaintiff was required (as defendant contends) to reside continuously for two years prior to the suit’s filing within the jurisdiction of such tribunal, the evidence preponderate^ discloses that the requirement was satisfied. Except for making several intervening pleasure trips she spent that entire period in the City of New Orleans, all the while having the intention of being domiciled there.-
Referring to one of those pleasure trips — to Biloxi, Mississippi, for two days on a week end — defense counsel suggest that it delayed the commencement of plaintiff’s New Orleans domicile until June 12, 1950 and resulted in her not having lived in Orleans Parish for two years when this action was instituted on June 10, 1952. From the record we find that when arriving in New Orleans on June 8, 1950, she had the intention of securing a permanent apartment at the Pontchartrain Hotel located in that city. However, these accommodations were not immediately available, and she was compelled to take temporary quarters at the Monteleone Hotel. There she stayed for two days or until her week end visit to Biloxi. On returning to New Orleans on June 12, 1950, she was able to obtain, and she moved into, an apartment at the Pontchartrain Hotel. Her bona fide residence in New Orleans since that time is undisputed.
In charging that the separation of the parties on June 8, 1950 was not voluntary, defense counsel argue that “plaintiff did not have sufficient mental capacity in order to determine that she would separate from defendant.” The evidence does not support this argument; rather, it warrants a conclusion to the contrary. It discloses that although on the occurrence of the separation plaintiff was emotionally ill and under the care of physicians (just as she *99 had been for some time), she was not mentally abnormal. Her medical doctor, who saw her first on June 13, 1950, testified:
“Q. When you first came into contact with this lady in June, 1950 did she act abnormally in any way as far as her mental capacity was concerned?
A. No, sir.
“Q. From the very first time you saw this lady what have you to say relative to her intellect? Was she a person of mediocre intellect, average or above the average intellect ? A. I would say she was above the average' intellect.”
And a pyschiatrist, a witness for defendant who had often treated plaintiff and had observed her a few days prior to the separation, was asked: “The brain processes that go about to make up the intent to do something; that was all right?” He replied : “She was perfectly rational and conscious.”
In passing upon defendant’s third and final complaint, which is that the court of the matrimonial domicile (in Caddo Parish) alone had and has jurisdiction ratione materiae of plaintiffs partition demand (not the Orleans Parish court), a consideration of the following is important: On November 27, 1953, defendant’s appeal was lodged in this court. Thereafter, the Legislature enacted Act 448 of 1954, LSA-R.S. 13:4991, which recites in part:
“Section 1: That in all cases where a community of acquets and gains created by a marriage, or otherwise, is terminated by a judgment of separation of bed and board, or by judgment of divorce, despite the Court where such judgment may have been rendered, jurisdiction of all suits and, actions, by' and between the parties to such pre-existing community of acquets and gains, seeking a judicial partition and liquidation of such preexisting community of acquets and gains, nevertheless shall, be vested exclusively in the District Court of Louisiana having jurisdiction of the last matrimonial domicile of the marriage between the parties located in the State of Louisiana, and in the absence of such matrimonial domicile, then such jurisdiction shall be vested exclusively in the District Court of Louisiana having jurisdiction over the immovable property belonging to the preexisting community of acquets and gains, or the District Court of Louisiana having jurisdiction over fhe principal immovable property, in the event such property is located in one or more Parishes, or in the absence of any immovable effects within the State, then jurisdiction shall be vested in the District Court having jurisdiction of the principal movable effects within this State.
* •
*101 “Section 4: This Act shall be retroactive and remedial and shall apply in all instances where a judgment decreeing a partition of a pre-existing community of acquets and gains has not become final.”
Invoking and relying on such statute, particularly Section 4 thereof, defense counsel insist that the judgment of the Orleans Parish court must be reversed insofar as it refers all interested parties to an Orleans Parish notary public for the purpose of effecting a partition. They contend that even if such court had the authority initially to consider and adjudicate plaintiff’s partition demand, its jurisdiction with respect thereto has since been divested (pending this appeal) by the quoted statutory provisions. To quote from their brief: “* * * Accordingly, the judgment in this case not having been final upon the passage and effect of Act 448 of 1954, jurisdiction of the Civil District Court for the Parish of Orleans to partition and liquidate the community of acquets and gains, was divested and vested exclusively in the Court having jurisdiction over the matrimonial domicile to-wit, the First Judicial District Court of Louisiana, in and for the Parish of Caddo. * * *»
Our conclusion is that the statutory provisions are inapplicable to the instant cause and, accordingly, the contention cannot be sustained. For us to interpret the statute as counsel request us to do would result in giving to Section 4 thereof an effect violative of the state Constitution. Our appellate jurisdiction of this case is restricted to a review of the proceedings had in the trial court, and it discloses no irregularity with respect to plaintiff’s partition demand including the judgment rendered thereon. A reversal of that judgment now, based solely upon the statutory provisions enacted subsequent to its rendition and during the pendency of the appeal, could be characterized only as an exercise by the Legislature of power properly belonging to the judiciary. Prohibiting such an exercise are Sections 1 and 2 of Article 2 of the Louisiana Constitution, reading:
“The powers of the government of the State of Louisiana shall be divided into three distinct departments — legislative, executive, and judicial.
“No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereafter expressly directed or permitted.”
Counsel for plaintiff urge other grounds for the alleged inapplicability and invalidity of the quoted statutory provisions, but they need not be discussed in view of our conclusion announced above.
Long after the submission of this cause for adjudication here, and even subsequent *103 to' the preparation of this opinion, defendant filed for the first time a plea of unconstitutionality directed at Act 430 of 1938, LSA-R.S. 9:301—the statute which provides that continuous separation for two years is ground for an absolute divorce. No citation of authority is needed to show that such plea, tendered at this late date, cannot be considered.
For the reasons assigned the judgment appealed from is affirmed.
FOURNET, C. J., and HAWTHORNE, J., concur in the decree.